# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MOHAMMED BADRI, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION 11-0328-WS-M |
| MOBILE HOUSING BOARD, et al., | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the plaintiff's motion for preliminary injunction. (Doc. 16). The plaintiff has filed a brief in support, the defendants a response, and the plaintiff a reply. (Docs. 16, 20, 21). The parties also filed a joint listing of issues and agreed facts, (Doc. 19), and the Court conducted a telephone conference on August 16, 2011. After carefully considering the foregoing, the Court concludes that the motion for preliminary injunction is due to be granted.

## BACKGROUND

The plaintiff is a recipient of Section 8 housing through the defendant housing board ("MHB"). (Doc. 19 at 1). On April 13, 2011, the plaintiff's wife and children were escorted by police to a shelter for domestic violence. (*Id.* at 2). On April 28, the wife provided MHB a one-paragraph letter stating that she and the couple's children were living in the shelter because the plaintiff "threatened us by saying that he has a gun an [sic] he will shoot all of us with it. He also abused us at times by hitting us and cursing at us[.] He is dangerous and we never live to him [sic]." (Doc. 20, Exhibit D; Doc. 19 at 2).

On April 29, MHB notified the plaintiff by mail that his assistance was terminated and that the voucher would be transferred to his spouse and children effective May 31.

[1]

The letter stated that MHB "has received information that verifies that your spouse and children have entered a shelter for domestic violence." (Doc. 16, Exhibit A at 1). The letter noted that "[d]omestic violence is a factor in determining whether or not to terminate assistance" and that, in determining whether to transfer the voucher, MHB's policies required it to consider "[w]hether family members are forced to leave the unit as a result or [sic] actual or threatened physical violence against family members by a spouse or other member of the household." (*Id.*). The letter provided no details of any abuse or violence.

The plaintiff, acting through counsel, timely requested an informal hearing. (Doc. 19 at 2-3). Within that letter, he "request[ed] copies of all documents held by your office and which was [sic] used by you as an aid in making your initial decision to terminate Mr. Badri['s] rental assistance." (Doc. 16, Exhibit D at 4). MHB provided no documents to the plaintiff or his counsel prior to the May 18 informal hearing. (Doc. 20 at 7-8).[1]

Plaintiff's counsel, by e-mail, also requested "the specifics of the nature of the abuse Mr. Badri was suppose [sic] to have committed. … At a minimum I would expect the date(s) of the abuse, whether it was physical or mental abuse …, and the exact nature of the abuse." (Doc. 16, Exhibit B). Defense counsel responded that "[t]he facts of the matter is [sic] as follows: the police came to their unit on or about April 13, 2011, and removed the wife and kids from the apartment and transferred them to a shelter for domestic violence." (*Id.*, Exhibit C). MHB provided no other information to the plaintiff or his counsel prior to the informal hearing. (Doc. 20 at 2).[2]

At the hearing, MHB presented no live witnesses. Its case consisted of: (1) the wife's letter; (2) an e-mail from the apartment manager stating that the police removed the wife and children and transported them to a domestic violence shelter and that the

---

[1] Defense counsel confirmed this during the August 16 telephone conference.

[2] Defense counsel confirmed this during the August 16 telephone conference.

wife "is pressing charges on Mr. Badri for domestic violence"; (3) a brief letter from the shelter confirming the wife and children's residence and stating that the wife "feels that returning to her home would not be safe for her and the children"; (4) a form certification from the shelter stating that the shelter's representative "believe[s] that the incident(s) described above [none are described] … are bona fide incidents of abuse"; and (5) a police report dated four weeks after April 13, reflecting that the wife walked in and made a complaint of domestic violence involving "voice making threats, hands" as the weapons/tools used in the offense. (Doc. 16, Exhibit F at 1, 2; Doc. 20, Exhibits B-F).[3]

The plaintiff presented live testimony from himself and from other witnesses, as well as documentary evidence, to the effect that he did not engage in domestic violence and that his wife has abused him for years. (Doc. 19 at 3).

The hearing officer, an employee of MHB, prepared a written decision. Her "summary of evidence" detailed MHB's documents but was silent as to the plaintiff's evidence. Without explanation, the hearing officer concluded that MHB's documents demonstrated an actual or threatened incident of domestic violence, in violation of various rules and regulations, and upheld the decision to terminate the plaintiff and transfer the voucher to his wife. (Doc. 16, Exhibit F at 2-3).

The complaint includes nine causes of action, but the plaintiff advances four on this motion: (1) procedural due process; (2) the Housing Act of 1937 and implementing regulations; (3) Violence Against Women Act; and (4) equal protection. (Doc. 16 at 13). Because it is dispositive of the pending motion, the Court focuses on the due process claim. While the plaintiff alleges several due process violations, the Court addresses only the cross-examination aspect of the claim, as it resolves the motion.

---

[3] Defense counsel confirmed during the August 16 telephone conference that MHB submitted no other evidence except copies of rules, regulations and statutes.

# DISCUSSION

"To secure a [preliminary] injunction, a party must prove four elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest." *Citizens for Police Accountability Political Committee v. Browning*, 572 F.3d 1213, 1217 (11th Cir. 2009); *accord Forsyth County v. United States Army Corps of Engineers*, 633 F.3d 1032, 1039 (11th Cir. 2011). The movant bears "the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).

## A. Irreparable Injury.

"A showing of irreparable injury is the sine qua non of injunctive relief." *Siegel*, 234 F.3d at 1176 (internal quotes omitted). A "substantial likelihood" of irreparable injury is sufficient. *Id.* at 1276 n.9. "The absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Id.* at 1276. An irreparable injury "must be neither remote nor speculative, but actual and imminent." *Id.* (internal quotes omitted).

The plaintiff is 62 years old and disabled. His current income is approximately $700 a month from Social Security. The monthly rent on his apartment is $644, of which his voucher covers $625. (Doc. 16 at 24; *id.*, Plaintiff's Declaration at 6).[4] Without the voucher, rent would absorb most of the plaintiff's regular income or he would be required to locate cheaper, less satisfactory housing.

Other Circuits have ruled that significant reductions in public benefits to impoverished citizens constitutes irreparable injury to them. *See Beno v. Shalala*, 30 F.3d 1057, 1063 n.10 (9th Cir. 1994) ("Numerous cases have held that reductions in

---

[4] The defendants have not challenged these assertions.

AFDC benefits, even reductions of a relatively small magnitude, impose irreparable harm on recipient families.") (citing cases); *Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir. 1975) (termination of refugee cash assistance benefits) ("For people at the economic margin of existence, the loss of $172 a month and perhaps some medical care cannot be made up by the later entry of a money judgment."); *Banks v. Trainor*, 525 F.2d 837, 842 (7th Cir. 1975) (affirming a lower court determination that the plaintiffs "would be irrevocably injured by the reduction in food stamp benefits"); *cf. Park Village Apartment Tenants Association v. Mortimer Howard Trust*, 636 F.3d 1150, 1159 (9th Cir. 2011) (lessor's threat to evict Section 8 tenants satisfied irreparable harm requirement); *LaForest v. Former Clean Air Holding Co.*, 376 F.3d 48, 55 (2nd Cir. 2004) (reduction in retirees' health care benefits demonstrated irreparable harm due to, inter alia, substantial risk to health and severe financial hardship).

The Eleventh Circuit has likewise indicated that an impecunious plaintiff's loss of housing constitutes irreparable harm. Thus, "irreparable injury is suffered when one is wrongfully ejected from his home," especially if the plaintiff "must live in inadequate, often health endangering housing for any period of time." *Johnson v. United States Department of Agriculture*, 734 F.2d 774, 788 (11th Cir. 1984). Under the Fair Housing Act, irreparable injury is rebuttably presumed from the fact of a violation, in part because there is a "loss of safe, sanitary, decent … housing" whenever housing discrimination occurs. *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1424 (11th Cir. 1984) (internal quotes omitted); *accord Rogers v. Windmill Pointe Village Club Association, Inc.*, 967 F.2d 525, 529 (11th Cir. 1992).

The defendants do not address this element.[5] For the reasons set forth above, the Court concludes that the plaintiff has shown a substantial likelihood of irreparable injury should no injunction issue.

---

[5] Their one-paragraph argument under this heading does not in fact address the irreparable harm element. (Doc. 20 at 11).

## B. Substantial Likelihood of Success on the Merits.

"[P]articipation in a public housing program is a property interest protected by due process." *Davis v. Mansfield Metropolitan Housing Authority*, 751 F.2d 180, 184 (6th Cir. 1984); *see Goldberg v. Kelly*, 397 U.S. 254, 261-64 (1970) (termination of federal welfare benefits must be accomplished in accordance with procedural due process); *Atkins v. Parker*, 472 U.S. 115, 128 (1985) (food stamp benefits, like welfare benefits, are property such that due process must accompany their termination). The Eleventh Circuit has acknowledged that *Goldberg*'s reasoning – that the interest of a recipient in continued receipt of benefits outweighs the state's interest in summary adjudication – "applies with equal force to public housing assistance provided pursuant to Section 8." *Basco v. Machin*, 514 F.3d 1177, 1182 n.7 (11th Cir. 2008). The defendants do not deny that the termination of Section 8 benefits triggers due process guarantees.

"[W]hen welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process." *Goldberg*, 397 U.S. at 264. "[A] recipient [must] have timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Id*. at 267-68. Moreover, "the recipient must be allowed to retain an attorney if he so desires." *Id*. at 270. "Finally, the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing." *Id*. at 271. "And, of course, an impartial decision maker is essential." *Id*.

"In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses. … Welfare recipients must therefore be given an opportunity to confront and cross-examine the witnesses relied upon by the department." *Goldberg*, 397 U.S. at 269-70. The defendants concede that due process required the plaintiff to have an opportunity to cross-examine MHB's witnesses. (Doc. 20 at 4). MHB, however, presented no live

witnesses. Instead, it relied exclusively on documents, all of which constituted hearsay and most of which constituted double hearsay. Because there were no live witnesses, the plaintiff was not able to cross-examine the witnesses on whose written statements MHB relied.

The defendants argue that this hearsay evidence, and the hearing officer's reliance on it, did not violate the plaintiff's due process rights because the evidence satisfied the test employed in *Basco*. (Doc. 20 at 6). Assuming without deciding that *Basco* addressed the cross-examination aspect of due process rather than a "substantial evidence" issue, MHB's evidence does not satisfy *Basco*.

"Hearsay may constitute substantial evidence in administrative proceedings as long as factors that assure the underlying reliability and probative value of the evidence are present. … The reliability and probative force of such evidence depend on whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable." *Basco*, 514 F.3d at 1182 (internal quotes omitted).

The plaintiff's wife was patently and extremely biased, especially considering she had requested that her husband's voucher be transferred to her. (Doc. 16, Exhibit D). The defendants point to no judicial decision approving of such self-serving assertions from an adversary as inherently reliable, and the Court will not assume that such improbable authority exists.

The representatives of the shelter may not be as obviously biased as the wife, but because the shelter caters to alleged female victims of domestic violence, there is at least a suspicion of bias in her favor. There is no apparent reason to suspect the apartment manager or the police officer of such bias. Nor are these four statements inconsistent on their face, either internally, compared with each other, or compared with the wife's

letter.[6] But neither is there any indication that courts view such statements, with their hearsay within hearsay, as inherently reliable.[7]

So it comes down to the plaintiff's ability to obtain, before the hearing, the information contained in the witnesses' statements and to subpoena them for the hearing. As noted, plaintiff's counsel explicitly requested MHB to provide documents prior to the hearing, and MHB ignored the request. MHB did so even though governing regulations require it to provide the plaintiff "the opportunity to examine before the PHA hearing any PHA documents that are directly relevant to the hearing" and prohibit the use at the hearing of such documents that are not made available beforehand. *Basco*, 514 F.3d at 1181 n.6.

Plaintiff's counsel tried again, requesting specific information about the alleged abuse. MHB simply repeated the unhelpful statement from its initial letter that the wife and children had entered a shelter for domestic violence, adding only the date this occurred and that the police were involved.

Thus, despite the diligent efforts of plaintiff's counsel, MHB elected to keep secret: (1) that the wife alleged he had threatened to shoot the family with a gun and had struck family members with his hand; (2) that the wife would not appear or testify at the hearing; (3) that MHB would instead introduce her letter; (4) that MHB would rely on four other hearsay and double hearsay documents from witnesses it would not produce at the hearing; (5) the identity of these witnesses; and (6) the content of the witnesses' statements. Under these circumstances, the plaintiff could not have obtained the

---

[6] This is not surprising, since they merely parrot what the wife has told them as hearsay, without their having any personal knowledge at all.

[7] These are hardly the medical reports of treating and other physicians which the cases cited by *Basco* involved. *See Richardson v. Perales*, 402 U.S. 389, 402 (1971); *U.S. Pipe & Foundry Co. v. Webb*, 595 F.2d 264, 270 (5th Cir. 1979).

[8]

information in the statements prior to the hearing and could not have thereafter subpoenaed the declarants to appear at the hearing.

For the reasons set forth above, the hearsay statements on which MHB relied at the hearing do not satisfy *Basco*. The Court concludes that the plaintiff has demonstrated more than a substantial likelihood of success on the merits of his due process claim due to MHB's failure to afford him the opportunity to confront and cross-examine its witnesses.[8]

### C. Remaining Considerations.

The harm to the plaintiff of losing his subsidized housing – up to and including homelessness – has been outlined in Part A, and it outweighs any minor inconvenience to MHB of continuing the subsidy while this litigation continues. *See Park Village*, 636 F.3d at 1160 ("The hardship of eviction on elderly low-income tenants is self-evident."). Since, as the defendants concede, Section 8 reflects a public policy of assisting qualified individuals in obtaining and maintaining appropriate housing, (Doc. 20 at 13), an injunction does not appear adverse to the public interest.

The defendants argue that both these factors counsel against issuance of an injunction. In addition, they assert the affirmative defense of unclean hands. Each of these arguments depends in its entirety on the proposition that the plaintiff is in fact guilty of criminal domestic violence. (Doc. 20 at 3, 12-13).

The threshold problem with this approach is that, as discussed in Part B, MHB has not reliably concluded that the plaintiff committed domestic violence. Indeed, the plaintiff presented significantly more detailed and persuasive evidence on this score than MHB, which relied on the wife's brief written accusation, repeated as hearsay by others.

---

[8] The Court has and expresses no opinion whether the plaintiff could have obtained preliminary injunctive relief based on other aspects of his due process claim or based on other claims.

[9]

It is not clear that MHB even now is prepared to make a stronger showing of domestic violence. Of the seven witnesses it listed for an evidentiary hearing, (Doc. 25 at 1-2), only the plaintiff and his wife appear to have personal knowledge of any such violence, and they are listed as "may call or will call."[9]

Regardless of the defendants' intentions, no evidentiary hearing is appropriate to resolve the issue of who abused whom. "An evidentiary hearing is not always required before the issuance of a preliminary injunction." *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc*., 887 F.2d 1535, 1538 (11th Cir. 1989). "Where the injunction turns on the resolution of bitterly disputed facts, however, an evidentiary hearing is normally required to decide credibility issues." *Id*. In both *All Care* and the case on which it relied for this proposition, the party opposing injunctive relief had submitted affidavits contradicting the movant's affidavits. *See id*. at 1539 ("The conflicting affidavits placed in serious dispute issues central to the appellees' claims."); *Forts v. Ward*, 566 F.2d 849, 851 (2nd Cir. 1977) ("It is well established that motions for preliminary injunctions should not be resolved on the basis of affidavits which evince disputed issues of fact."); *see also Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A*., 320 F.3d 1205, 1208-09, 1211-12 (11th Cir. 2003) (court erred in entering an injunction with virtually no notice to the nonmovant and in failing to hold a hearing on the nonmovant's motion to dissolve, which was supported by affidavits).

On August 1, accompanying his motion for preliminary injunction, the plaintiff submitted a detailed declaration under penalty of perjury. Therein, he denies committing any domestic violence, relates a long and sorry history of abuse by his wife, and explains benignly the circumstances surrounding her April 13 departure from the home. (Doc. 16, Badri Declaration). The defendants, despite having over two weeks to do so, have

---

[9] Three witnesses have not appeared in the parties' briefing and are described only as "Section 8." The other two witnesses are the hearing officer and the apartment manager, neither of whom has personal knowledge of domestic violence.

[10]

submitted no affidavits or declarations to counter the plaintiff's evidence. Instead, they continue to rely on the same five unsworn, unimpressive documents they placed before the hearing officer. This is inadequate to "plac[e] in serious dispute" whether the plaintiff committed a domestic violence offense and is therefore inadequate to call for an evidentiary hearing. On this record the Court concludes, for present purposes only, that the plaintiff did not do so.

Nor would it assist the defendants were the Court to conduct an evidentiary hearing and conclude that the plaintiff engaged in domestic violence as alleged by his wife. The defendants' argument is that MHB has a duty to protect tenants from harm, (Doc. 20 at 12), but they have not explained how domestic violence against a spouse or child – now removed from the apartment complex – threatens harm to other tenants.

Despite the defendants' failure to meaningfully address the defense, the Court assumes without deciding that the doctrine of unclean hands can be invoked to preclude injunctive relief despite the applicant's satisfaction of the four prerequisites for such relief. "For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements. First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. [citations omitted] Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by [the] conduct." *Calloway v. Partners National Health Plans*, 986 F.2d 446, 450-51 (11th Cir. 1993).

As to the first requirement, the plaintiff's misconduct must be "directly related to the merits of the controversy between the parties." *Mitchell Brothers Film Group v. Cinema Adult Theater*, 604 F.2d 852, 863 (5th Cir. 1979). The plaintiff's claim here is for a due process violation visited upon him in connection with the informal hearing. His alleged domestic violence chronologically preceded the due process violation and eventually, through a chain of events, offered MHB the opportunity to commit the

[11]

violation,[10] but his alleged domestic violence is not "directly related to the merits" of this claim since, if his due process rights were violated, they were violated regardless of whether he actually committed domestic violence. As to the second requirement, the defendants have not asserted, much less shown, that they were personally injured by any domestic violence by the plaintiff.

**D. Scope of Relief.**

The plaintiff seeks an injunction prohibiting MHB from refusing to make rental assistance payments and requiring MHB to restore missed payments from the filing of the complaint to date. (Doc. 16 at 1). The defendants do not challenge the form of the requested injunction.

The plaintiff seeks a waiver of the security requirement of Rule 65(c) on the grounds of impecuniousness. (Doc. 16 at 2). The defendants articulate no challenge to this request. "[I]t is well-established that the amount of security required by the rule is a matter within the discretion of the trial court ... [, and] the court may elect to require no security at all." *BellSouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (internal quotes omitted). A number of appellate courts have waived security by indigent plaintiffs,[11] as have several district

---

[10] The alleged domestic violence (or, more accurately, an accusation of such violence) prompted the termination of the plaintiff's voucher. The termination then prompted the plaintiff to request an informal hearing. The request for an informal hearing gave rise to various due process obligations, at least some of which MHB subsequently violated.

[11] *See Temple University v. White*, 941 F.2d 219-20 (3rd Cir. 1991); *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 701 (7th Cir. 1977); *Crowley v. Local No. 82*, 679 F.2d 978, 1000 (1st Cir. 1982), *rev'd on other grounds*, 467 U.S. 526 (1984).

courts in this Circuit.[12]  In the absence of objection from the defendants, the Court follows suit.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for preliminary injunction is **granted**.  Defendant Mobile Housing Board is **ordered** to restore any missed rental assistance payments from June 22, 2011 through the date of this order and is **ordered** to continue making rental assistance payments pending further order of the Court.  The plaintiff need post no security.

DONE and ORDERED this 22nd day of August, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[12] *See Worley v. Roberts*, 749 F. Supp. 2d 1321, 1329 (N.D. Fla. 2010); *Sanders v. Sellers-Earnest*, 768 F. Supp. 2d 1180, 1188 (M.D. Fla. 2010); *Carter v. Montgomery Housing Authority*, 2009 WL 3711565 at *2 (M.D. Ala. 2009).